## CHRISTINE IRENE CHANCE v. RODNEY MICHAEL LaPAUSKY

[No. 1278, September Term, 1978.]

*Decided July 11, 1979.*

The cause was argued before THOMPSON, LOWE and WILNER, JJ.

*Joseph B. Spillman, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Joel J. Rabin, Assistant Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *C. Eugene Schmidt, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

No appearance or brief for appellee.

LOWE, J., delivered the opinion of the Court.

The County of San Diego filed a petition for support of a child under the Uniform Reciprocal Enforcement of Support Act (URESA). The petition ultimately reached the Circuit Court for Baltimore County, the jurisdiction in which appellee resides.

The petition was filed by San Diego County as the provider of public support for Tracy M. LaPausky, daughter of Rodney Michael LaPausky and his former wife, Christine Irene Chance, in whose stead San Diego has brought the action under § 8 of the Uniform Act, Md. Ann. Code art. 89C.

> "Whenever the State or a political subdivision thereof furnishes support to an obligee it has the same right to invoke the provisions hereof as the obligee to whom the support was furnished for the purpose of securing reimbursement of expenditures so made and of obtaining continuing support."

Appellee answered the petition but denied that he owed the child a duty of support or that he had refused or had neglected to support the child. He alleged that upon his divorce May 16, 1974, Christine Chance was provided both the custody and the obligation of support and maintenance of the child. At a hearing before Judge William Buchanan, Sr. on October 24, 1978, he submitted a certified copy of the decree from the Circuit Court of Baltimore City. The decree stated that Christine I. LaPausky

> " . . . shall have the guardianship and custody of TRACY MARIE LAPAUSKY, the minor child of the parties in this proceeding, *be chargeable with her support and maintenance,* accounting from the date of this Decree, . . . all subject to the further Order of this Court in the premises." (emphasis added).

Appellee contended that there is no enforceable duty of support "imposed or imposable" upon him in this State, which is prerequisite to indebting him to San Diego. The statute reads:

> "Duties of support applicable under this article are

those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." Md. Ann. Code art. 89C, § 7.

The term "duty of support" is defined in subsection (g) of § 2 of the Uniform Act:

"(g) *'Duty of support'* includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance or otherwise."

The trial judge denied the petition, stating that "I am going to give full faith and credit to my own state's decree."

The Attorney General has appealed on behalf of San Diego contending that the

"[l]ower court's conclusion that the existence of a Maryland divorce decree precludes action brought under the Uniform Reciprocal Enforcement of Support Act is erroneous."

That contention and appellant's arguments tiptoe around the issues that we must decide, but never quite come to grips with them. The State argues that:

*"The remedies in Article 89C are available even though a Maryland Court has granted a decree divorcing the resident obligor.",*

which is a generally proper conclusion but does not address the problem at hand. Before URESA provides a remedy, there must be àn imposed or imposable duty upon appellee to support. Md. Ann. Code art. 89C, § 7. Only if the *responding* state finds a duty of support may it order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to such order. Md. Ann. Code art. 89C, § 23. There is no question that these remedies are available

if a court decree has expressly imposed an obligation of support, or even if, sub silentio, it leaves a statutory obligation to support as an imposable possibility. *See, e.g.,* Md. Ann. Code art. 72A (charging both parents with a joint and several support obligation). However, a divorce or other decree may circumscribe that obligation for either or both parents, thus leaving no § 7 obligation "imposed or imposable." *State ex rel. Arvayo v. Guerrero,* 21 Ariz. App. 173, 517 P. 2d 526 (1973) (interpreting the wording and intent of the Uniform Act).

Where the decree avoiding the support obligation is not appealed before it becomes enrolled, the propriety of that decree is beyond the jurisdiction of the URESA court, *Guerrero, supra,* and there is no duty to support under the Act. The purpose of the Act is to improve and extend "the enforcement of duties of support." Md. Ann. Code art. 89C, § 1. It does not address the creation or resurrection of those duties where none exist or where an existing duty has been relieved. The Uniform Commissioner's Prefatory Note (1958) pointed out that:

> "Its purpose has been, and is, not to create new duties of support but to provide by reciprocal legislation for the enforcement, across state lines, of duties of support already existing." *Uniform Enforcement of Support Act,* 9 U.L.A. 885-886 (1973).

In the case at bar, then, the crucial question is an interpretive one, *i.e.,* whether LaPausky's divorce decree implicitly discharged him from the statutorily imposable duty to support his child absent express negative language so stating. It elliptically addressed only Mrs. Chance's obligation, stating that she

> " ... shall ... be chargeable with [the child's] support and maintenance ...."

It was silent as to Mr. LaPausky.

Since both parents were already charged statutorily with the support of the child, there is no purpose inferable for

singling out Mrs. Chance for a recitation of her responsibility unless the judge intended to discharge Mr. LaPausky from his then extant joint and several statutory obligation. If that were not the purpose, the court's decree would simply be mouthing the statutory obligation of one parent with an unexplainable silence as to the other; that would be an absurd construction. If we are not to indulge in absurd statutory interpretations, *cf. B. F. Saul Co. v. West End Bank,* 250 Md. 707, 722 (1968); *Sanza v. Md. Board of Censors,* 245 Md. 319, 340 (1967),[1] surely the same rule holds true for judicial decrees.

Unless and until the divorce decree is modified to resurrect a duty to support, there is no obligation to support imposed or imposable; consequently nothing exists to enforce by a URESA action. In passing, we note that San Diego admitted in its brief that it was not a party to the divorce action, and it is not "attempting to proceed in the divorce action in Baltimore City." Even if it was so proceeding, it could hardly succeed under the statute. For San Diego to attempt such action would be solely for the purpose of creating a duty to support where none now exists. While the statute permits San Diego to stand in Mrs. Chance's shoes, it may only do so

" . . . for the purpose of securing reimbursement . . . and of obtaining *continuing* support." Md. Ann. Code art. 89C, § 8. (emphasis added).

The conjunctive prerequisite of obtaining continuing support for the purpose of securing reimbursement, does not enlarge the expressed purpose of the Act beyond *enforcement* of

---

1. At argument appellant contended that § 29 of the Uniform Act permitted the California order to prevail over the Baltimore City divorce decree. The language relied upon is, however, inappropriate if not directly contrary to appellant's position.

"No order of support issued by a court of this State when acting as a responding state shall supersede any other order of support . . . ."

First, there is no "order of support issued by a court of this State when acting as a responding state." Second, there is no other existing order of support against appellee. If the divorce decree is so interpreted, § 29 would appear to say that no order of the Baltimore City court (as responding state) could supersede the "other order of support" (the divorce decree).

existing obligations any more than does the § 3 provision that the remedies in the Act are "in addition to and not in substitution for any other remedies." *See Guerrero, supra.*

In summation, before San Diego can have a remedy under URESA, there must be a duty imposed or lawfully imposable upon appellee which gives San Diego a right to a remedy under the Act. As the situation presently exists, by virtue of the prior divorce decree, there is no such duty imposable unless the decree is modified upon petition by Mrs. Chance. It obviously follows there is no right for San Diego to collect something Mr. LaPausky has no lawful obligation to pay.

*Judgment affirmed.*
*Costs to be paid by appellant.*