**Laurian P. CHARLESWORTH,
Plaintiff and Appellee,**

v.

**STATE OF CALIFORNIA and Blanca
H. Charlesworth, Defendants
and Appellants.**

**No. 890297–CA.**

Court of Appeals of Utah.

May 18, 1990.

R. Paul Van Dam, Michael D. Smith, Salt Lake City, and Karl G. Perry, Ogden, for defendants and appellants.

Pete N. Vlahos and F. Kim Walpole, Ogden, for plaintiff and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendants Blanca Charlesworth and the State of California appeal from an order entered in an action brought pursuant to Utah's version of the Uniform Reciprocal Enforcement of Support Act (URESA). Laurian and Blanca Charlesworth were divorced in 1983, pursuant to a Utah decree. Blanca then moved to California with the parties' two children, and shortly thereafter gave birth to a third child conceived during the parties' marriage. The divorce decree provided for reasonable visitation and also that child support be held in abeyance until further order of the court.

In 1988, a "Petition for Support (URESA Case)" was filed in Utah, under the same caption and case number as the divorce action, with the State of California designated as an additional defendant. The petition had attached to it an affidavit and California complaint for support, stating that Blanca and her three children were receiving public support from California. The petition sought an order to show cause and reasonable child support, both past and prospectively.

Laurian had attempted to locate Blanca and his children during the intervening years since the divorce, but had been unable to find them. As a result, he had not seen his children at all during that time period.

After several hearings, the trial court ordered Laurian to pay prospectively $76 per child per month to the clerk of the court, with the clerk to hold those funds until such time as Laurian was able to exercise visitation with his children. During the course of the proceedings, Blanca and her children moved from the address noted in the petition exhibits and could not be located. Counsel appearing for both Blanca and California[1] was unable to provide a current address for Blanca, and further represented at oral argument that she was no longer receiving public assistance.

Defendants appeal, claiming the court lacked authority under URESA to enter an order regarding visitation and that the support order could not be contingent upon visitation. Laurian argues, however, that the court's continuing jurisdiction in domestic cases and equitable considerations validate the court's order.

URESA has been adopted by Utah in Utah Code Ann. § 77-31-1 to -39 (1982). Sections of URESA pertinent to this case provide as follows:

> 77-31-8. Whenever the state or a political subdivision thereof furnishes support to an obligee, or whenever an individual not receiving support from the state or a

---

1. Utah Code Ann. § 77-31-18 (1982) provides that the county attorney shall prosecute actions wherein Utah is the responding state.

political subdivision makes an application for child support collection ... the state or political subdivision has the same right to invoke the provisions hereof as the obligee for the purposes of securing reimbursement of support expenditures, collecting child support, and establishing paternity.

77–31–9. *All duties of support, including arrearages, and arrearages reimbursable to the state or a political subdivision thereof are enforceable by action* irrespective of the relationship between the obligor and the obligee. (Emphasis added).

....

77–31–18(1). After the court of this state acting as a responding state has received from the court of the initiating state the aforesaid copies, the clerk of the court shall docket the case and notify the county attorney of his action.

....

77–31–27. The courts of this state, when acting as a responding state, shall have the following duties which may be carried out through the clerk of the court:

(1) Upon the receipt of a payment made by the respondent pursuant to any order of the court or otherwise, to transmit the same forthwith to the department if the obligee is receiving child support enforcement services under Title IV–D of the Social Security Act or otherwise to the court of the initiating state;

....

77–31–31. Participation in any proceedings under this act shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding.

The purpose of URESA "is to improve and extend by reciprocal legislation the enforcement of duties of support. The goal sought by this legislation is to provide a prompt, expeditious way of enforcing the duty to support minor children without getting the parties involved in other complex, collateral issues." *Patterson v. Patterson,* 2 Kan.App.2d 447, 581 P.2d 824, 825 (1978) (citation omitted).

■ In conformity with section 77–31–31, most courts hold that no issues other than support may be considered in a URESA action. *Id.* While no Utah cases have addressed the issue, most jurisdictions hold that visitation interference is not a defense in a URESA action, *State ex rel State of Washington v. Bozarth,* 80 Or.App. 397, 722 P.2d 48, 49–50 (1986); *Cuccia v. Cuccia,* 773 S.W.2d 928, 930 (Tenn.Ct.App. 1989), because courts lack subject matter jurisdiction under URESA to terminate or modify child support due to interference with visitation. *In re Marriage of Truax,* 522 N.E.2d 402, 405 (Ind.Ct.App.1988). URESA, therefore, limits the court's jurisdiction to "the single issue of enforcement of support." *Id.*

The rationale for the limited subject matter jurisdiction is the need for a streamlined mechanism to enforce support obligations without consideration of other issues which would cripple those enforcement efforts. *Id.* In *Truax,* the court further observed that URESA proceedings are usually ex parte and do not contemplate a custodial/obligee parent traveling to the responding state to defend against claims arising from other related matters involving the divorce decree between the parties. *Id; see also Hoover v. Hoover,* 246 S.E.2d 179, 181 (S.C.1978). Further, because URESA provides that state attorneys represent the interests of other states which have provided support, the act does not contemplate that those attorneys "be transformed into a private attorney representing a client in a divorce proceeding in which visitation and custody issues are in dispute." *Cuccia,* 773 S.W.2d at 930. A minority position was taken in *Hoyle v. Wilson,* 746 S.W.2d 665 (Tenn.1988), where the court found that if the responding and the rendering (decree) state are identical, the court may exercise its continuing jurisdiction existing after its entry of the original decree establishing a support obligation. *Id.* at 671. However, the court limited that expanded jurisdiction by stating: "Of course, any order that changes custody or substantially alters the former decree should be entered only after a hearing at which both parties have notice and

the opportunity to appear...." *Id.* at 673. Most courts, however, limit consideration in URESA actions to support, excluding other issues, because "[t]he welfare of the child is the controlling factor in a proceeding involving support; not the conduct of the parents." *State ex rel. Hubbard v. Hubbard*, 110 Wis.2d 683, 329 N.W.2d 202, 205 (1983).

In light of the foregoing authority, we hold that the court lacked subject matter jurisdiction to enter an order regarding any matters other than Laurian's support obligation.[2] Therefore, the court erred in its order conditioning child support upon the affording of visitation rights.[3] In so holding, we in no respect condone the actions of Blanca in denying visitation and secreting herself and the children from Laurian. However, there are other remedies available to Laurian, the efficacy of which are realistically dependent on his ability to locate his ex-wife and children.

There is a further consideration which we address. Blanca evidently received assistance from California for a limited period of time and ceased receiving assistance prior to entry of the trial court's order. Section 77–31–8 allows a state or political subdivision to bring an action for support arrearages owed to the governmental entity. Thus, agencies which "have furnished public assistance to minor children have an independent right to seek reimbursement and continuing support from parents." *State ex rel State of Alaska v. Hargrove*, 89 Or.Ct.App. 17, 747 P.2d 366, 367 (1987). Therefore, we find that while the support order itself is valid, California's right to payment is limited to the

amount of support it actually provided to Blanca and the children subsequent to the entry of the award by the Utah court. Therefore, after California has received its rightful reimbursement, it is appropriate that future support payments be made as ordered by the trial court. We reverse and remand for a determination of the support to which California is entitled.

GARFF, J., concurs.

ORME, Judge (dissenting):

I take no serious issue with the majority's view of the law generally applicable to cases brought under URESA. And I would take no issue with the result my colleagues reach if an independent URESA action had been commenced simply to recover sums paid by California for the support of the subject children. This is not such a case, however, and accordingly I do not join my colleagues in reversing the trial court's disposition, which I believe was appropriate under the circumstances.

First, it is important to emphasize that relief was not sought in an independent action. On the contrary, a petition bearing the caption and case number of the underlying divorce action was filed in that case on behalf of defendant Blanca Charlesworth. The petition purported to show California as an additional defendant although leave of court was neither requested nor obtained to add an additional defendant to the underlying action. Accordingly, while California no doubt had a claim on any recovery that might be obtained and clearly was the impetus behind the effort to collect

2. While we agree with the dissent that it might be clearer if the action had been brought separately instead of under the existing divorce case number, nothing in URESA precludes filing a URESA petition as was done here. Furthermore, we are informed that this is the standard practice in Utah, we have found no cases from other jurisdictions which prohibit the practice, and, in fact, many seem to follow the same procedure. The dissenting opinion also states that no leave was obtained to add California as a party defendant. However, that issue was not raised below and, therefore, cannot be considered on appeal. *See Zions First Nat'l. Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 655 (Utah 1988). The rationale advanced in the

dissenting opinion concerning lack of full inquiry concerning the children's circumstances and appropriateness of the visitation order, would have equal application in a separate URESA action, but because of the limited jurisdiction under that act, would clearly be irrelevant.

3. *See Race v. Race*, 740 P.2d 253, 256 (Utah 1987), where the supreme court held that child support payment could not be conditioned upon the noncustodial parent's obtaining visitation. *See also McReynolds v. McReynolds*, 787 P.2d 530 (Utah Ct.App.1990) (per curiam).

support, the only defendant properly before the court was defendant Blanca Charlesworth.

Not only did California seek enforcement of a support obligation in a pending divorce action over which the court had continuing jurisdiction as a matter of statutory law, *see* Utah Code Ann. § 30–3–5(3) (1989), but in addition it chose to pursue the matter in the context of a case where the court's prior decree had expressly "held in abeyance until the further order of the Court" the issue of child support. This provision seems to have been prompted by defendant's inappropriate action in concealing her whereabouts and that of the children, as a result of which no meaningful evidence could be obtained about the children's circumstances and Blanca's ability to contribute to their support. In addition to being unable to intelligently set a level of support payments to be made by plaintiff, the court no doubt hoped that the lack of support payments from plaintiff might smoke Blanca out, require her to come forward, and permit the court to have access to the information necessary to determine an appropriate level of support.

The trial court remains thwarted in its effort to receive meaningful evidence relative to the children's circumstances and necessary to its determination of an appropriate level of permanent child support to be paid by plaintiff. It remains thwarted in its ability to enforce the "reasonable visitation" it also decreed in favor of plaintiff. At least in the context of the divorce action over which the court has continuing jurisdiction—and this is the context in which California chose to raise the issue—I think the court has the power and discretion to balance the parties' respective legal obligations in the way it did: Plaintiff has a legal duty to pay towards the support of his children; defendant has the legal duty to make the children available for reasonable visitation. Moreover, the court is entitled to consider evidence about the children's circumstances so it can get the question of child support out of "abeyance" and fix as part of its divorce decree an appropriate amount for plaintiff's discharge of his ongoing support obligation. An order

directing defendant to make minimal support payments to be held by the clerk, with disbursement to follow when the children are found, best accomplishes these purposes.

California sought to enforce a support obligation which had advisedly been held in abeyance. It sought to do so in the context of a divorce action over which the court has continuing jurisdiction as to a wide range of issues. Whatever might have been appropriate in the context of an independent URESA action, the order entered by the court in this divorce proceeding was appropriate and I would affirm it.